**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff,**

v.

**TRANSAMERICA AIRLINES, INC., Defendant.**

No. C 85–2803 SW.

United States District Court, N.D. California.

Aug. 8, 1985.

Michael E. Abram, Jay P. Levy-Warren, James L. Linsey, Cohen, Weiss & Simon, New York City, James R. Ritchie, Henning, Walsh & Ritchie, San Francisco, Cal., for plaintiff Air Line Pilots Ass'n, Intern.

Fisher & Phillips, Ned A. Fine, San Francisco, Cal., and Robert J. Berghel, William F. Kaspers, James J. McDonald, Jr., Atlanta, Ga., for defendant Transamerica Airlines, Inc.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

SPENCER WILLIAMS, District Judge.

The matter is before the court on defendant Transamerica Airlines, Inc.'s (hereafter "Transamerica") motion to dismiss plaintiff Air Line Pilot Association, International's (hereafter "ALPA") complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. At the conclusion of the hearing on this motion, the court dismissed without prejudice the first count of plaintiff's complaint. The court requested supplemental briefing on and took under advisement that portion of the motion which pertained to the second count of the complaint.

In the second count, plaintiff contends that defendant's creation of a separate airline subsidiary "subverts and impairs the representative standing, collective bargaining rights and legitimate effectiveness of ALPA to represent Transamerica's pilots ..., and violates rights of ALPA and Transamerica's pilots to a collective bargaining relationship free of influence, interference, or coercion by defendant." ALPA contends that this conduct violates the Railway Labor Act (hereafter "RLA" or "the Act"), 45 U.S.C. § 152, Third and Fourth, which, respectively, prohibit interference with the designation of representatives and give employees the right to organize and bargain collectively without interference from a carrier. The issue is whether this claim presents a simple representation dispute, committed to the exclusive jurisdiction of the National Mediation Board ("NMB") pursuant to 45 U.S.C. § 152, Ninth, or whether the claim encompasses factors other than representation which this court has jurisdiction to entertain at this time. After careful consideration of all the arguments and evidence before the court, it is hereby ordered that defendant's motion to dismiss the second cause of action is GRANTED.

## FACTS

Transamerica is a charter airline engaged in the business of providing air transportation service in interstate and foreign commerce. Plaintiff ALPA is the duly authorized exclusive collective bargaining representative of the airline pilots employed by Transamerica. For many years, plaintiff and defendant have made and maintained collective bargaining agreements.

The RLA requires that the parties before the court "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions and to settle all disputes ... in order to avoid any interruption to commerce." 45 U.S.C. § 152, First. Before disputing parties covered by the Act may resort to self-help, they are required to exhaust a procedure set out in the Act. Initially, the parties must attempt by good faith conferences to reach agreement. 45 U.S.C. § 152, Second. If the conferences fail, the parties may invoke the services of the NMB, 45 U.S.C. § 155, First, which is required to use its best efforts to bring them to agreement. If the NMB determines that a settlement through mediation is not possible, it must endeavor to induce the parties to arbitrate their controversy. *Id.* If either party refuses to arbitrate, the NMB notifies the parties that its mediatory efforts have failed; the parties then enter a 30-day cooling off period, after which time they may resort to self-help. *Id.*

ALPA and Transamerica commenced negotiations over the terms of a new collective bargaining agreement in March 1984. Unable to reach agreement, they jointly invoked the NMB's assistance and have

been engaged in mediation sessions since July 1984. On March 27, 1985, plaintiff filed its complaint in which it seeks injunctive and other relief against defendant for alleged violations of the RLA, 45 U.S.C. §§ 151 *et seq.*

In count I of its complaint, ALPA alleges that Transamerica, together with its corporate parent, "formulated and commenced to implement a plan to compel Transamerica's pilots to operate in accordance with rates of pay and working conditions to be imposed by Transamerica whether or not they would be agreed to by ALPA." Transamerica and its parent allegedly created Trans International Airline, a subsidiary, to achieve this goal. ALPA contends that although Transamerica entered into collective bargaining negotiations, it has refused to bargain in good faith and to exert every reasonable effort to make and maintain disputes and to settle disputes in a manner consistent with the requirements of 45 U.S.C. § 152, First. Because the court determined that it had no jurisdiction to entertain this claim prior to the exhaustion of the RLA's dispute resolution procedures, defendant's motion to dismiss this count of the complaint was granted without prejudice.

In the second count of the complaint, ALPA alleges that defendant's course of conduct, particularly the creation of Trans International Air, violates 45 U.S.C. § 152, First and Fourth, by subverting and impairing "the representative standing, collective bargaining rights, and legitimate effectiveness of ALPA to represent Transamerica's pilots." Essentially, ALPA believes that defendant together with its corporate parent established Trans International Air, a charter airline which allegedly operates in Transamerica's marketplace, so that work which would otherwise be done by ALPA members will be performed by Trans International pilots. Defendant contends that the court lacks jurisdiction to entertain this claim as it raises a representation dispute committed wholly to the NMB.

## ANALYSIS

The issue for the court to decide is how to properly characterize plaintiff's second claim. As will be discussed *infra,* the Second Circuit has affirmed the dismissal for lack of subject matter jurisdiction of a substantially similar claim brought by ALPA in another proceeding. Plaintiff contends, however, that the Ninth Circuit authorities in Labor Management Relations Act (hereafter "LMRA") and in an RLA case demonstrate that the exercise of subject matter jurisdiction over plaintiff's second cause of action is appropriate.

In seeking to have the second count of the complaint dismissed for lack of subject matter jurisdiction, defendant argues that ALPA's claim arises under 45 U.S.C. § 152, Ninth, which provides in relevant part:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute . . .

Defendant contends that ALPA itself demonstrated that its claim raises a representation dispute when it filed with the NMB a petition for classification of carrier status, seeking a ruling on whether Transamerica and Trans International constitute a single carrier and whether ALPA has the right to bargain on behalf of pilots employed by Trans International.

In addition, defendant argues that the claims raised by ALPA here are nearly identical to those it raised in *ALPA v. Texas Int'l. Airlines,* 656 F.2d 16 (2d Cir. 1981). In *Texas Int'l.,* ALPA was the collective bargaining representative of the pilots of Texas International. The corporate parent of Texas International established New York Air, a separate, non-union airline subsidiary. ALPA alleged that this corporate restructuring constituted an effort to defeat the existing collective bargaining agreement between ALPA and Texas International. This conduct was alleged to violate Texas International's statutory duties

"(1) to 'treat with" ALPA as the exclusive representative of (Texas International)'s pilots, § 2, Ninth; (2) to maintain the collective bargaining agreement, § 2, First; (3) to allow representatives to be designated without interference, influence, or coercion, § 2, Third; (4) to refrain from interference in the organization of the employees, § 2, Fourth; and (5) to refrain from attempting to unilaterally change rates of pay, rules, and working conditions, § 2, Seventh, § 6."

*Id.* at 18. Thus, ALPA's claim here that the creation of Trans International violates 45 U.S.C. § 152, Third and Fourth, essentially tracks claims ALPA made in *Texas Int'l.*

The district court's dismissal of ALPA's claims was affirmed by the Second Circuit, which noted at the outset that the case presented neither a pure representation dispute under 45 U.S.C. § 152, Ninth, nor a pure interference claim under 45 U.S.C. § 152, Third and Fourth. No traditional representation dispute existed because there was no rival union and there had been an application to nor a certification by the NMB. Nonetheless, the court held where a representation dispute appears on the face of a complaint, the court must dismiss the action in light of 45 U.S.C. § 152, Ninth. Acknowledging that courts traditionally play a narrow role in enforcing the RLA, the Second Circuit concluded that "(n)either the framework and history of the RLA nor the cases authorizing judicial intervention under the Act", *Id.* at 24, establish that subject matter jurisdiction over this claim exists.

Were Second Circuit authority controlling here, this court clearly would lack subject matter jurisdiction over the claim before it. It is plaintiff's contention that under Ninth Circuit authority, which does control, subject matter jurisdiction does lie.

One argument that plaintiff makes in support of its position that the court possesses jurisdiction over this claim is based cases arising under the LMRA.

In *Bhd. of Teamsters, Local No. 70 v. California Consolidators, Inc.*, 693 F.2d 81 (9th Cir.1982) (per curiam), plaintiff filed an action under section 301(a) of the LMRA, 29 U.S.C. § 185(a), seeking a declaratory judgment that a trucking firm was bound by the union's collective bargaining agreement with a pool car distributor because the two entities constituted a single employer. The Ninth Circuit reversed the district court, which had found that it lacked jurisdiction because the National Labor Relations Board had exclusive jurisdiction over the single employer issue.

Employing the two step analysis adopted by the Supreme Court in *South Prairie Construction Co. v. Local 627, Int.'l Union of Operating Engineers*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam), the Ninth Circuit determined that questions whether two entities are bound by a collective bargaining agreement "comprise two subsidiary issues", *California Consolidators*, 693 F.2d at 82. The court held that a district court "may decide under § 301 whether two companies constitute a single employer, (b)ut a single employer conclusion fails to determine that the employees form a single or an appropriate bargaining unit." *Id.* at 83 (citations omitted). The court held that under § 301 district courts have jurisdiction to decide whether employers constitute a single employer but do not have jurisdiction to determine the second part of the issue, the appropriateness of the bargaining unit. *See also Northwest Administrators v. Con Iverson Trucking, Inc.*, 749 F.2d 1338 (9th Cir.1984) (court generally has no jurisdiction to decide representational issues in NLRA cases, but under § 301 it does have jurisdiction to determine whether one company was a successor or alter-ego to another which could be bound by an agreement the other entered, and if so, to determine whether the successor or alter-ego ever effectively repudiated the collective bargaining agreement).

Plaintiff argues that the same two-step analysis must govern in this RLA case and that *California Consolidators, South Prairie,* and *Northwest Administrators* demonstrate that, at a minimum, this court

has jurisdiction to consider the first part of the inquiry, i.e., whether Transamerica and Trans International constitute a single employer.

■ While it certainly is true there are parallels between the RLA and other labor statutes, such parallels "should be drawn with the utmost care and with full awareness of the differences between the statutory schemes." *Chicago and N.W. R. Co. v. United Transportation Union*, 402 U.S. 570, 579 n. 11, 91 S.Ct. 1731, 1736 n. 11, 29 L.Ed.2d 187 (1971). *See also Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969) (although cases arising under the NLRA are useful in construing the RLA, they cannot be "imported wholesale in the railway labor arena" and analogies must be drawn "circumspectly, with due regard for the many differences between the statutory schemes").

■ Even assuming *arguendo* that the second count of ALPA's complaint raises an issue which should be analyzed under the two-part analysis originally set out in *South Prairie*, the RLA differs from the LMRA in ways which would make the exercise of jurisdiction over any part of ALPA's second claim improper.

■ Section 301 of the LMRA [1] expressly confers jurisdiction upon federal courts to enforce contracts; that jurisdiction extends to determinations of whether a particular employer is bound by a collective bargaining agreement. In contrast, the RLA contains no corollary to § 301; rather, as will be discussed *infra*, questions of contract interpretation constitute minor disputes which must be submitted to final and binding arbitration and are subject to limited judicial review only after such an arbitration award has been rendered. *See* 45 U.S.C. § 153. Therefore, the fact that the court possesses jurisdiction to adjudicate the single employer question in NLRA cases does not indicate that it also has jurisdiction to make the same determinations in RLA cases. The statutory framework of the RLA demonstrates that Congress intended that, with few exceptions, questions of contract interpretation not be brought before the courts until binding arbitration has occurred.

Plaintiff's second argument evolves from *Butte, Anaconda & Pacific Ry. v. Bhd. of Locomotive Firemen and Enginemen*, 268 F.2d 54, 58 (9th Cir.), *cert. denied*, 361 U.S. 864, 80 S.Ct. 122, 4 L.Ed.2d 104 (1959). In *Butte*, the railway established a new switching and loading yard and ascertained that its employees, who were represented by the union, were willing to perform at the new yard under work rules different from those in existence at its other yard. The railway then served upon the union a notice proposing amendments to the labor agreements, and the parties commenced negotiations on the proposed work rule changes. When the union did not agree readily to the changes the railway desired, the railway announced that the work at the new yard would be done by employees of its corporate parent. The union threatened to strike, and the railway sued to enjoin the threatened strike.

The district court dismissed the action and the court of appeals affirmed. One of the issues before the circuit was whether the controversy presented a major or a minor dispute under the RLA. Plaintiff contends that in the course of its discussion of the major/minor dispute issue, the Ninth Circuit demonstrated that this court has jurisdiction over single employer questions in RLA cases. For the following reason, the court disagrees.

Disputes under the RLA are classified either as major or minor disputes. Major disputes, which involve attempts to form collective bargaining agreements and/or change rates of pay, rules or working conditions, are resolved through the confer-

---

1. Section 301(a) provides in relevant part:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction over the parties ...
   29 U.S.C. § 185(a).

ence, mediation, and arbitration process described above. Minor disputes, which involve grievances directed to the meaning or proper application of a particular provision in an agreement, are to be resolved through arbitration which is binding upon the parties and final. *See Elgin J. & E.R. Co. v. Burley,* 325 U.S. 711, 724, 65 S.Ct. 1282, 1290, 89 L.Ed.2d 1886 (1945).

■ In RLA cases where injunctions prohibiting a strike are sought, such as *Butte,* it is necessary as a threshold matter to determine whether a dispute is major or minor. The Norris-LaGuardia Act prohibits the issuance of an injunction in an RLA case involving a major dispute, but a strike may be enjoined when a minor dispute occurs.

It is for this reason that the *Butte* court began its analysis with an examination of whether the dispute before it was major or minor. In so doing, the court rejected the railway's contention that a major dispute had concluded when the union rejected that railway's proposal, the railway withdrew its section 6 notice, and the switching operations at the new yard were transferred to employees of the railway's parent.

In discussing the railway's last assertion—that the transfer of jobs terminated the dispute—the court stated:

It may be assumed ... that where an independent shipper, not acting in concert with a carrier, determines to perform its own switching service on its own property, section 6 mediation proceedings involving a dispute relative to such service are necessarily terminated.

Here, however, the carrier is the wholly-owned subsidiary of the shipper ... The two have common principal officers and the unified purpose of serving the ultimate best interests of the shipper. Under these circumstances the act of Anaconda in taking over the switching service, to be performed by employees represented by another union, must be regarded as the act of the carrier. Otherwise, a carrier by interrelation with its shipper would always have it within its

power to circumvent the mediation provision of the RLA.

*Id.* at 59–60.

Plaintiff argues that this passage demonstrates that this court has jurisdiction to consider the single employer question under the RLA. It argues that Transamerica, like the carrier in *Butte,* acted in concert with its corporate parent to use the device of separate corporations to avoid its bargaining and representation obligations under the Act.

The court rejects plaintiff's argument for two reasons. First, the factual setting in *Butte* was not similar to the one before this court. The court in *Butte* was not addressing the question whether a court has jurisdiction to consider whether two employers are bound by a collective bargaining agreement signed by one of them; instead, the court was addressing the separate issue of whether the major dispute had terminated, leaving only a minor dispute and depriving the court of jurisdiction to issue an injunction. In the course of its discussion, the court did determine that the conduct of one employer could be attributed to another, but it did so only because a threshold jurisdictional question was raised by defendant's assertion that the dispute the court was examining was a minor one.

The situation before the court in this instance does not present the same question. The resolution of the single employer question here is not a necessary precondition to the determination whether the court has jurisdiction over the case; rather, the single employer question is the ultimate issue which plaintiff seeks to have the court determine. This question simply was not before the *Butte* court.

Second, the passage quoted above does not constitute the holding of *Butte.* It merely is dicta. Because the factual situation there was so different, this dicta provides little or no guidance to this court.

In sum, the question whether this court has jurisdiction over plaintiff's second count has never been addressed directly in the Ninth Circuit. In view of the careful

and convincing analysis of this issue which the Second Circuit undertook in *Texas Int'l.* and the unmistakable congressional intent, evident in 45 U.S.C. § 152, Ninth, to have representation issues in RLA cases resolved exclusively by the NMB, the court finds that dismissal of plaintiff's second count is mandated.

IT IS THEREFORE ORDERED that defendant's motion to dismiss the second count of the complaint is GRANTED.