**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff-Appellant,**

v.

**TRANSAMERICA AIRLINES, INC., Defendant-Appellee.**

No. 85–2455.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 9, 1986.

Submitted Jan. 8, 1987.

Decided May 14, 1987.

As Amended July 1, 1987.

Michael E. Abram, James Linsey, New York City, for plaintiff-appellant.

James E. McDonald, Jr., Atlanta, Ga., for defendant-appellee.

Before CHOY, GOODWIN and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

While the Air Line Pilots Association, International ("ALPA") and Transamerica Airlines ("Transamerica") were in the process of negotiating a new collective bargaining agreement, and while the parties were in mediation to assist this process, ALPA filed the instant suit against Transamerica. The complaint alleges that Transamerica violated the Railway Labor Act ("the Act") by refusing to bargain and by establishing a nonunion replacement subsidiary to which Transamerica would divert business. Transamerica moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), and the district court granted the motion, 615 F.Supp. 371. ALPA appeals the dismissal of the complaint.

We hold that the district court had subject matter jurisdiction over both alleged violations and that both violations give rise to claims upon which relief can be granted.

## BACKGROUND

ALPA is the exclusive collective bargaining representative under the Act for pilots employed by Transamerica. In March 1984, ALPA and Transamerica began negotiating the terms of a new collective bargaining agreement. The parties jointly invoked the assistance of the National Mediation Board ("the Board") in July 1984 and have been involved in mediation since that time. On March 27, 1985, ALPA commenced the instant action against Transamerica.

The complaint alleges that Transamerica, together with its corporate parent, Transamerica Corporation, formulated a plan to institute pay scales without the approval of ALPA; that to further this plan, Transamerica entered into collective bargaining negotiation with ALPA, but failed and refused to exert reasonable efforts to reach agreement or bargain in good faith; and that Transamerica acted with its corporate parent to achieve the plan's wage-lowering goal by establishing a separate subsidiary to operate in Transamerica's marketplace.

The complaint also alleges that Transamerica threatened to terminate its operations. Count I of the complaint alleges that this conduct violates 45 U.S.C. § 152 First. Count II alleges that this conduct violates 45 U.S.C. § 152 Third and Fourth.

■ Affidavits from the parties describe the following additional facts. On or about August 11, 1986, Transamerica announced its intention to cease all flight operations. On September 30, 1986, Transamerica ceased all flight operations. Transamerica pilots were permanently furloughed effective October 2, 1986. Transamerica stated that it is going out of business permanently. For this reason, Transamerica moved after the completion of briefing to dismiss this appeal as moot.[1]

## DISCUSSION

Disposition of a motion to dismiss for lack of subject matter jurisdiction and disposition of a motion to dismiss for failure to state a claim are both reviewed de novo by this court. *Peter Starr Production Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir.1986) (subject matter jurisdiction); *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir.1984) (failure to state a claim). The reviewing court must, with respect to both motions, construe the allegations of the complaint favorably to the plaintiff, and must dismiss the complaint only if no set of facts could be proved that would entitle the plaintiff to relief under the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974).

### I. *Enforcement While Mediation is in Progress*

45 U.S.C. § 155 First establishes a procedure for settling disputes between employees and the carrier concerning, *inter alia*, changes in pay, rules, and working conditions. *See Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S.

1. We hold that this case is not moot because effects bargaining may continue despite the cessation of flight operations, because the complaint seeks damages in addition to injunctive relief, and because the wrongs alleged may be capable of reptition yet evading review.

369, 377–78, 89 S.Ct. 1109, 1114–15, 22 L.Ed.2d 344 (1969). When such a dispute arises, both parties or either party as part of that procedure may invoke the services of the Board, which "shall use its best efforts, by mediation, to bring them to agreement. If such efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor as its final required action ... to induce the parties to submit their controversy to arbitration...." 45 U.S.C. § 155 First.

The Act imposes a number of restrictions upon the conduct of the parties throughout the dispute-settlement procedure. These restrictions include "the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise...." 45 U.S.C. § 152 First.

### A. *Subject Matter Jurisdiction*

█ The district court held that there is no subject matter jurisdiction over a claim under 45 U.S.C. § 152 First while mediation conducted by the Board is in progress. In support of this holding, Transamerica makes two arguments.

The first is that mediation is a sensitive process that will suffer as a result of judicial interference. In support of this argument, Transamerica cites *International Association of Machinists v. National Mediation Board*, 425 F.2d 527 (D.C.Cir. 1970), which held that courts have only limited jurisdiction to scrutinize the Board's decision not to terminate mediation. But this case is not on point. The question whether federal courts have jurisdiction to review Board decisions is not the same as the question whether federal courts have jurisdiction to enforce provisions of the Act. This distinction is central to the Supreme Court's decision not to allow judicial review of the Board's certification of representatives. *Switchmen's Union v. National Mediation Bd.*, 320 U.S. 297, 305–07, 64 S.Ct. 95, 99–100, 88 L.Ed. 61 (1943).

Transamerica has presented no case in which deference to the mediation process has restricted the ability of federal courts to enforce the provisions of 45 U.S.C. § 152 First.

Transamerica's second argument is that ALPA has presented no case in which a court has allowed enforcement of 45 U.S.C. § 152 First while mediation was in progress. This assertion is accurate. Federal courts, however, do have jurisdiction to enforce the provisions of 45 U.S.C. § 152 First. In *Chicago & North Western Railway Co. v. United Transportation Union*, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187 (1971), which involved a suit commenced after mediation had been terminated, the Court stated:

> [W]e think the conclusion inescapable that Congress intended the enforcement of § 2 First [45 U.S.C. § 152 First] to be *overseen by appropriate judicial means* rather than by the Mediation Board's retaining jurisdiction over the dispute or prematurely releasing the parties for resort to self-help if it feels such action is called for.

*Id.* at 582 (emphasis added).

Transamerica has presented no authority restricting federal jurisdiction while mediation is in progress. Similarly, ALPA has presented no case involving litigation undertaken to enforce 45 U.S.C. § 152 First while mediation was in progress. Because *Chicago & North Western* instructs that enforcement of 45 U.S.C. § 152 First is to be "overseen by appropriate judicial means rather than by the Mediation Board's retaining jurisdiction," we conclude that subject matter jurisdiction exists.

The district court in its oral ruling held that it lacked subject matter jurisdiction because it saw "a technical problem of being able to file a lawsuit while bargaining is going on, and then being able to take depositions of the people who are negotiating and screw up the strategy." Similarly, Transamerica argues that there is no subject matter jurisdiction because deference to the discretion of the Board must be exercised in light of the fact that "[c]ollective bargaining under the supervision of a National Mediation Board mediator in-

volves many intricate strategic and tactical moves by both parties." These prudential considerations do not, however, speak to the issue of subject matter jurisdiction, which is governed by congressional enactment, and not judicial prudence.[2]

### B. *Failure to State a Claim*

■ Transamerica contends that ALPA has failed to allege a violation of 45 U.S.C. § 152 First. In the complaint, however, ALPA alleges that "Transamerica has entered into collective bargaining negotiations with ALPA, ostensibly to conclude a new collective bargaining agreement, but in those negotiations it has failed and refused to exert reasonable efforts to reach agreement with ALPA or otherwise to negotiate in good faith with ALPA." This alleged activity violates the requirement in 45 U.S.C. § 152 First that carriers "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes." *See Chicago & Northwestern*, 402 U.S. at 580 n. 11, 91 S.Ct. at 1736 n. 11; *Trans Int'l Airlines, Inc. v. International Bhd. of Teamsters*, 650 F.2d 949, 962 (9th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981) ("The Supreme Court in [*Chicago & North Western*] held that [45 U.S.C. § 152 First] imposed a substantive duty on parties, enforceable by injunctive relief, to exert reasonable efforts during the negotiation process to reach an agreement.") Thus, the ALPA complaint states a claim under 45 U.S.C. § 152 First.

### II. *Creation of a Replacement Subsidiary*

In addition to 45 U.S.C. § 152 First's requirement that the parties exert reason-

able efforts to make and maintain agreements and settle disputes, the Act requires, *inter alia*, that "neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives," 45 U.S.C. § 152 Third, and that "it shall be unlawful for any carrier to interfere in any way with the organization of its employees ... or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization." 45 U.S.C. § 152 Fourth.

### A. *Subject Matter Jurisdiction*

■ Federal courts have jurisdiction to enforce the provisions of 45 U.S.C. § 152 Third and Fourth prohibiting interference with effective representation and organization. *Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 543, 57 S.Ct. 592, 597, 81 L.Ed. 789 (1937); *Texas & N.O.R. Co. v. Brotherhood of Ry. & S.S. Clerks*, 281 U.S. 548, 569, 50 S.Ct. 427, 433, 74 L.Ed. 1034 (1930); *Ruby v. TACA Int'l Airlines*, 439 F.2d 1359, 1364 (5th Cir.1971); *Brotherhood of Ry. Trainmen v. Central of Ga. R.R. Co.*, 305 F.2d 605, 608–09 (5th Cir. 1962). Thus, federal courts have subject matter jurisdiction over claims alleging the establishment of a replacement subsidiary to the extent that those claims are actually within the purview of 45 U.S.C. § 152 Third and Fourth.

The district court held that the claims concerning the replacement subsidiary involve a representational dispute falling under 45 U.S.C. § 152 Ninth, not a dispute under 45 U.S.C. § 152 Third or Fourth, and for that reason subject matter jurisdiction

---

**2.** To the extent that Transamerica does attempt to show that Congress did not provide for subject matter jurisdiction under these facts, it refers to the testimony of Donald R. Richberg at the House hearings on the proposed Act. The testimony excerpt is intended to support the proposition that judicial intervention into collective bargaining under the Act should be limited to outright refusals to bargain. Yet the portion quoted by Transamerica contains the following: "if they [either party] refused absolutely to confer, to meet or discuss or negotiate, I think there is a question as to whether there

might not be invoked some judicial compulsion...." Hearings on H.R. 7180 before the House Committee on Interstate and Foreign Commerce, 69th Cong., 1st Sess. 66 (1926). The complaint alleges that Transamerica "has failed and refused ... to negotiate in good faith with ALPA," which is tantamount to refusal "to negotiate" as stated in the Richberg quote. It is largely on the basis of the Richberg testimony that the Supreme Court held that subject matter jurisdiction does exist generally over 45 U.S.C. § 152 First. *See Chicago & North Western*, 402 U.S. at 576–77, 91 S.Ct. at 1735.

is lacking.[3] The district court in so holding relied upon the Second Circuit decision in *Air Line Pilots Association, International v. Texas International Airlines,* 656 F.2d 16 (2d Cir.1981).

In *Texas International* the corporate parent of an existing airline underwent a corporate restructuring whereby a new subsidiary was created to service a route that the existing airline subsidiary had *not* serviced, but that the existing subsidiary was authorized to service. ALPA, the plaintiff union in the *Texas International* case, asserted that pilots employed by the new subsidiary must be covered by the collective bargaining agreement made with the existing subsidiary. The Second Circuit held that the suit constituted a representational dispute under 45 U.S.C. § 152 Ninth, and therefore that the courts did not have subject matter jurisdiction over it. The court's holding was, however, a restricted one.

The court distinguished acts giving rise to jurisdiction under § 152 Third and Fourth from those that could give rise only to representational disputes. In the first category it placed such acts as transferring existing business flown by ALPA pilots to a newly formed corporate alter ego in order to take work from the union. 656 F.2d at 19. In the second category, it placed such acts as forming a separate, fully independent company to serve routes neither flown nor certificated to the preexisting carrier. *Id.* In *Texas International,* the preexisting subsidiary had never flown the routes assigned to the new subsidiary, although it was authorized to do so. Therefore, the court found that the facts fit in the second category, and gave rise to a representational dispute within the exclusive jurisdiction of the Board.

In the instant case, the complaint alleges that Transamerica, along with its corporate parent, acted "to devise a second airline subsidiary for [the corporate parent] to operate in Transamerica's marketplace."

Consequently, the instant case is closer to the first category noted in *Texas International,* where the carrier seeks to "transfer existing business flown by ALPA pilots to a newly formed corporate alter ego for the purpose of displacing the work of ALPA pilots," *id.,* and, therefore, is an interference with representation and organization within the purview of 45 U.S.C. § 152 Third and Fourth.

As the above discussion indicates, *Texas International* does not support dismissal for lack of subject matter jurisdiction in the instant case. In fact, it recognizes the application of 45 U.S.C. § 152 Third and Fourth to the diversion of work from a subsidiary bound by a collective bargaining agreement to a newly formed, related non-union subsidiary that would operate in the same marketplace.

We hold that a federal court has jurisdiction to hear a dispute in which an employer is alleged to have established a nonunion replacement subsidiary in order to transfer to it work being performed by an existing subsidiary that is bound by a collective bargaining agreement.

### B. *Failure to State a Claim*

ALPA asserts that the portion of the complaint referring to the creation of a replacement subsidiary states a claim both with respect to the status quo requirements of the Act and with respect to the portions of the Act prohibiting the undermining of representation and organization.

■ The status quo provision in 45 U.S.C. § 156, states in relevant part: "In every case where ... the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon...." The Supreme Court described the status quo provisions of the Act

---

**3.** Representational disputes under 45 U.S.C. § 152 Ninth are disputes over "whether one organization or another was the proper representative of a particular group of employees." *Switchmen's Union v. National Mediation Bd.,*

320 U.S. 297, 302, 64 S.Ct. 95, 98, 88 L.Ed. 61 (1943). Courts have no jurisdiction over Board determinations in such disputes. *Id.* at 305–06, 64 S.Ct. at 99.

generally in *Detroit & Toledo Shore Line Railroad Co. v. United Transportation Union*, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969), as follows:

> The obligation of both parties during a period in which any of these status quo provisions is properly invoked is to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute.

*Id.* at 152–53, 90 S.Ct. at 301. *See Trans Int'l Airlines v. International Bhd. of Teamsters*, 650 F.2d 949, 967 (9th Cir.1980). ALPA's complaint alleges that,

> Transamerica has acted with [its corporate parent] to devise a second airline subsidiary for [the parent] to operate in Transamerica's marketplace, wholly or partly as a device and instrument to achieve Transamerica's goal [to dictate rates of pay and working conditions] and to further Transamerica's plan as aforesaid; in further support of that plan Transamerica has threatened to terminate its own operations.

The prospect of having work shifted to a replacement subsidiary would constitute a change in the working conditions and practices under the *Shore Line* standard. *See Local 553, Transp. Workers Union v. Eastern Air Lines*, 544 F.Supp. 1315, 1327 (E.D.N.Y.1982), *modified*, 695 F.2d 668 (2d Cir.1983) ("the deprivation of a work opportunity involving the type of work traditionally performed by the Union is a change in working conditions, even where the work is new.").

Transamerica argues that ALPA has not stated a claim because "ALPA never alleged in its Complaint that Transamerica violated the status quo obligations of the RLA." It is true that the complaint does not mention the status quo provisions of 45 U.S.C. § 156. However, "[a] 'complaint is not to be dismissed because the plaintiff's lawyer has misconceived the proper legal theory of its claim, but is sufficient if it shows that the plaintiff is entitled to *any* relief which the court can grant, regardless

of whether it asks for the proper relief.' " *United States v. Howell*, 318 F.2d 162, 166 (9th Cir.1963) (quoting *Dotschay v. National Mutual Ins. Co.*, 246 F.2d 221, 223 (5th Cir.1957)); *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (1969). Because the complaint alleges facts that would constitute a violation of 45 U.S.C. § 156, a claim has been stated.

■ ALPA argues that it also has stated a claim by alleging that "[d]efendant's course of conduct, as described ... above, subverts and impairs the representative standing, collective bargaining rights, and legitimate effectiveness of ALPA to represent Transamerica's pilots under the Act." ALPA's claim clearly fits within the language of 45 U.S.C. § 152 Third and Fourth. The complaint, broadly construed, alleges that Transamerica and its parent have sought to establish a subsidiary that could take over Transamerica's business but that would be unencumbered by the collective bargaining agreement with ALPA. The use of a similar "runaway shop technique to defeat the pilots' collective bargaining gains," when a carrier moved the pilot base to El Salvador in order to render ALPA's representation illegal under local law, was found to warrant injunctive relief under 45 U.S.C. § 152 Fourth. *Ruby v. TACA Int'l Airlines*, 439 F.2d 1359, 1364 (5th Cir. 1971).

Transamerica argues that 45 U.S.C. § 152 Third and Fourth cannot give rise to a claim once a union has been certified as the collective bargaining agent, and ALPA has already been certified in the present case. Transamerica cites *International Association of Machinists v. Northwest Airlines*, 673 F.2d 700 (3d Cir.1982) for support. The *Northwest Airlines* court did state that generally 45 U.S.C. § 152 Third and Fourth would not "provide for federal court jurisdiction in an action in which a union asserts that the disciplinary measures taken by a carrier *during the existence of a collective bargaining agreement* were motivated by anti-union animus." *Id.* at 709 (emphasis in original). However, the court also stated that it does not "foreclose the possibility that given the

appropriate case and the appropriate circumstances such an action could be brought in federal court." *Id.*

Furthermore, *Northwest Airlines* recognized that there is authority to the contrary. The Fifth Circuit case, *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.*, 305 F.2d 605, 608–09 (5th Cir.1962), granted relief under 45 U.S.C. § 152 Third during the existence of a collective bargaining agreement. *Northwest Airlines* sought to distinguish *Railroad Trainmen* on the ground that it was decided merely on the pleadings. The present case, which is before this court on a motion to dismiss under Fed.R.Civ.P. 12(b)(1) and (6), is also being decided on the pleadings. *Northwest Airlines*, therefore, does not support Transamerica's argument.[4]

Finally, Transamerica argues that liability under 45 U.S.C. § 152 Third and Fourth once a union had been certified as the collective bargaining agent is possible only in "unusual circumstances" when there has been "some overt, unlawful act on the part of the carrier that had a demonstrable effect upon the union involved." Even if this assertion is true, at this stage in the proceedings we have no evidence that this case does not involve unusual circumstances. The portion of the ALPA complaint alleging the establishment of a replacement subsidiary states a claim under 45 U.S.C. § 152 Third and Fourth, and also states a claim under 45 U.S.C. § 156.

## CONCLUSION

The district court has subject matter jurisdiction over both alleged violations in the complaint in the instant case. Furthermore, both violations give rise to claims upon which relief can be granted. Therefore, the orders granting Transamerica's motions to dismiss the complaint are reversed. This action is remanded to the district court for consideration of all issues that are not moot.

---

**4.** It should be noted that the Fifth Circuit case, *Ruby,* 439 F.2d at 1364, also involved a dispute after a union had been certified as the collective bargaining agent.