**PACIFIC FRUIT EXPRESS and Union Pacific Fruit Express Joint Protective Board, Brotherhood Railway Carmen of the United States and Canada, Plaintiff-Appellant,**

v.

**UNION PACIFIC, Union Pacific Express Company, a corporation; Union Pacific Railroad Company; Union Pacific Motor Freight Company, a corporation, Defendant-Appellee.**

No. 86–4235.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1987.

Decided Sept. 2, 1987.

Kenneth E. Rudd, St. Louis, Mo., for plaintiff-appellant.

Eugene A. Ritti, Boise Idaho, and I. Michael Greenberger, Washington, D.C., for defendant-appellee.

Before POOLE, FERGUSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Pacific Fruit Express and Union Pacific Fruit Express Joint Protective Board, Brotherhood of Railway Carmen (the union) appeals the district court's entry of summary judgment against it in this case arising under the Railway Labor Act. The union contends that Union Pacific Fruit Express Company (Union Pacific), Union Pacific Railroad Company (UPRC), and Union Pacific Motor Freight Company (UPMFC) are required under Section 2 First of the Railway Labor Act, 45 U.S.C. § 152 First (1982), to provide financial information to support Union Pacific's claim that layoffs of railroad carmen were neces-

sary because of a decline in business. Union Pacific responds that (1) the Railway Labor Act does not authorize courts to compel pre-arbitration discovery; (2) even if the Act creates a right to discovery, the court should submit this case to an adjustment board to determine whether the parties have waived any such right; and (3) neither UPRC nor UPMFC employed any of the furloughed carmen and therefore neither should be required to disclose information.

We agree that Section 2 First of the Railway Labor Act does not require the appellees to disclose financial information in this case, and we therefore affirm.

### FACTS

Union Pacific is a carrier within the meaning of 45 U.S.C. § 151 First (1982). The union is a railway labor union and a representative of Union Pacific's carmen within the meaning of 45 U.S.C. § 151 Sixth (1982). In 1980, Union Pacific began a series of layoffs of railway carmen at its Nampa, Idaho repair facility. The union contends that Union Pacific's layoffs amounted to an abandonment of the Nampa facility, and that furloughed Nampa carmen are therefore entitled to income protective benefits under a 1964 agreement between Union Pacific and the carmen. Union Pacific denies that it abandoned the Nampa facility and contends that a decline in rail traffic and increased competition made the layoffs necessary. Both sides agree that this underlying dispute is a "minor dispute" under the Railway Labor Act and that it cannot be litigated in court. *See* 45 U.S.C. § 153 First (i) (1982); *Lewy v. Southern Pacific Transportation Co.,* 799 F.2d 1281, 1289 (9th Cir.1986).

In 1983 and 1984, union officials asked Union Pacific to supply financial information to substantiate the claim that a decline in business caused the Nampa layoffs. Union Pacific refused to supply the requested information. The union then filed suit in district court, arguing that Union Pacific's refusal to disclose financial information violated Section 2 First of the Railway Labor Act, 45 U.S.C. § 152 First (1982). The dis-trict court entered summary judgment against the union, ruling that (1) it lacked jurisdiction to grant the union's discovery request because it had no jurisdiction over the underlying contract dispute; and (2) the union had no right to discovery under Section 2 First. This appeal followed.

### STANDARD OF REVIEW

We review a grant of summary judgment *de novo. Fagner v. Heckler,* 779 F.2d 541, 543 (9th Cir.1985). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

### DISCUSSION

Section 2 First of the Railway Labor Act provides:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First (1982). In *Chicago & North Western Railway Co. v. United Transportation Union,* 402 U.S. 570, 581, 91 S.Ct. 1731, 1737, 29 L.Ed.2d 187 (1971), the Supreme Court made it clear that Section 2 First obligations are judicially enforceable: "we think the conclusion inescapable that Congress intended the enforcement of § 2 First to be overseen by appropriate judicial means rather than by the Mediation Board's retaining jurisdiction over the dispute or prematurely releasing the parties for resort to self-help if it feels such action called for." *See also Air Line Pilots Ass'n v. Transamerica Airlines, Inc.,* 817 F.2d 510, 513–14 (9th Cir.1987).

The union contends that Union Pacific's failure to substantiate its claim of business losses violates Section 2 First's requirement that a carrier exert every reasonable effort to settle disputes. The union's main argument for this interpretation of Section 2 First is that the language of the provision is nearly identical to the language of Section 204(a)(1) of the National Labor Relations Act (NLRA),[1] which has been interpreted to require disclosure in similar situations. In *NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956), the Supreme Court held that the National Labor Relations Board was justified in finding that an employer had violated Sections 8(a)(5)[2] and 204(a)(1) of the NLRA by refusing to substantiate a claim that it could not afford to pay higher wages. The Court said:

> Good-faith bargaining necessarily requires that claims made by either bargainer should be honest claims. This is true about an asserted inability to pay an increase in wages. If such an argument is important enough to present in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy. And it would certainly not be farfetched for a trier of fact to reach the conclusion that bargaining lacks good faith when an employer mechanically repeats a claim of inability to pay without making the slightest effort to substantiate the claim.

351 U.S. at 152–53, 76 S.Ct. at 755–76; *see also NLRB v. Western Wirebound Box Co.*, 356 F.2d 88, 91 (9th Cir.1966). The union argues that Union Pacific's failure to substantiate its claim of business losses in the present case should likewise give rise to a cause of action under Section 2 First.

We disagree. First, we think it is clear that the obligation to exert every reasonable effort to settle disputes under the Railway Labor Act is not identical to the obligation to bargain in good faith under the NLRA. In *Chicago & North Western, supra,* the Supreme Court cautioned that courts should be wary of drawing parallels between the Railway Labor Act and the NLRA and of expanding the scope of Section 2 First beyond cases in which a party desires not to reach an agreement:

> While we have no occasion to determine whether § 2 First requires more of the parties than avoidance of "bad faith" as defined by Judge Magruder in *Reed & Prince, supra,* we note two caveats. First, parallels between the duty to bargain in good faith and the duty to exert every reasonable effort, like all parallels between the NLRA and the Railway Labor Act, should be drawn with the utmost care and with full awareness of the differences between the statutory schemes. [citation omitted] Second, great circumspection should be used in going beyond cases involving "desire not to reach an agreement," for doing so risks infringement of the strong federal labor policy against governmental interference with the substantive terms of collective-bargaining agreements.

\*    \*    \*    \*    \*    \*

1. Section 204(a), 29 U.S.C. § 174(a), provides in relevant part:

   In order to prevent or minimize interruptions of the free flow of commerce growing out of labor disputes, employers and employees and their representatives, in any industry affecting commerce, shall—

   (1) exert every reasonable effort to make and maintain agreements concerning rates of pay, hours, and working conditions, including provision for adequate notice of any proposed change in the terms of such agreements.

2. Section 8 of the NLRA, 29 U.S.C. § 158, provides in relevant part:

   (a) It shall be an unfair labor practice for an employer—

   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

   \*    \*    \*    \*    \*    \*

   (d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession. . . .

402 U.S. at 579 n. 11, 91 S.Ct. at 1736 n. 11. In *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 686 n. 23, 101 S.Ct. 2573, 2585 n. 23, 69 L.Ed.2d 318 (1981), the Court flatly stated that "[t]he mandatory scope of bargaining under the Railway Labor Act ... [is] not coextensive with the National Labor Relations Act and the Board's jurisdiction over unfair labor practices."

Second, we think the extensive judicial intervention that court-ordered disclosure would require is inconsistent with the history and principles of the Railway Labor Act. The Act "was the product of agreement between the carriers and the unions, based on extensive negotiation and compromise as well as decades of experience with railroad labor legislation." *Air Line Pilots Ass'n v. Texas International Airlines, Inc.*, 656 F.2d 16, 19 (2d Cir.1981). Congress intended the parties to work out disputes themselves, with a minimum of judicial intervention. *See Chicago & North Western*, 402 U.S. at 588–91, 91 S.Ct. at 1740–42 (Brennan, J. dissenting); *see also Fechtelkotter v. Air Line Pilots Ass'n*, 693 F.2d 899, 901 (9th Cir.1982) (citing the Act's "strong polic[y] in favor of arbitration and against judicial intervention"). Pacific Fruit's interpretation of Section 2 First would place the courts at the heart of the bargaining process whenever either side in a railway labor dispute sought information about the other. We think Congress intended otherwise.

Finally, we think it is significant that the Railway Labor Act created no administrative board comparable to the National Labor Relations Board (NLRB). When the NLRA requires a party to disclose information, the courts' role in the process is limited to reviewing NLRB disclosure orders under a deferential standard. *See, e.g., NLRB v. Associated General Contractors*, 633 F.2d 766, 770 (9th Cir.1980), *cert. de-*

*nied*, 452 U.S. 915, 101 S.Ct. 3049, 69 L.Ed.2d 418 (1981). Under the the union's interpretation of the Railway Labor Act, on the other hand, the courts would be solely responsible for administering and enforcing prearbitration disclosure. In the absence of clear evidence to the contrary, we are reluctant to assume that Congress intended to impose such a duty on the courts.

We conclude that the kind of court-ordered discovery sought in this case is incompatible with the aims and structure of the Railway Labor Act. We therefore affirm the district court's ruling that Section 2 First of the Railway Labor Act does not require the appellees to disclose financial information.[3]

AFFIRMED.

---

3. Because we affirm on the ground that appellees have not violated Section 2 First, we do not reach the questions (1) whether a party may waive its rights under Section 2 First; and (2) whether and to what extent UPRC and UPMFC are subject to the requirements of Section 2 First in the present case.

