INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,

v.

COMPANIA MEXICANA DE AVIACION, S.A. DE C.V., Defendant.

No. 97–3415–CIV.

United States District Court, S.D. Florida.

Feb. 27, 1998.

Robert Clayman, Andrea LaRue, Washington, DC, Jeffrey Manners, Coral Gables, FL, for Plaintiff.

Michael Kelly, Cleveland, OH, Robert Papkin, Washington, DC, for Defendant.

### *ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION*

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Plaintiff's Motion for Temporary and Preliminary Injunctive Relief, filed February 17, 1998. Defendant filed a response and Plaintiff filed a reply on February 24, 1998. Testimony was introduced and exhibits admitted at the non-jury trial conducted on February 25 and 26, 1998. The parties orally argued the case on February 26, 1998.

### I. Background

Plaintiff International Association of Machinists and Aerospace Workers, AFL–CIO ("IAM") is the collective bargaining representative for the reservation sales representatives, cargo representatives, ticket sales agents, and secretaries of Defendant Compania Mexicana de Aviacion, S.A. de C.V. ("Mexicana" or the "Company"). IAM currently represents 419 Mexicana employees. In 1994, Mexicana and IAM decided to enter into negotiations over various provisions of their current Collective Bargaining Agree-

ment. The first negotiating session was held on February 21, 1995, and the parties continued to bargain actively thereafter, including undergoing mediation supervised by the National Mediation Board ("NMB"). From the beginning of these negotiations, Mexicana openly sought the right to sub-contract work currently being performed by IAM-represented employees. This was one of the strategies the Company was pursuing in its attempt to reduce labor costs by 50%.

At the first NMB-supervised meeting in March 1996, Mexicana expressed its desire to outsource all work being done by IAM members. Accordingly, the Company offered an outline of a separation package that it was willing to offer the employees. Subsequently, Mexicana and IAM exchanged several proposals for a buy-out of the employees. With the parties unable to reach agreement, the NMB on January 5, 1998 released them from mediation, triggering the thirty-day "cooling-off period" required by statute. At the beginning of February, IAM submitted a settlement offer that was unacceptable to Mexicana. Mexicana also offered its final proposal, which provides for the termination of all 419 employees with a specified benefits package. IAM submitted this proposal to its members for a vote. Although the ballots have been turned in, IAM has not unsealed or counted them pending a resolution of its current motion before this Court for a preliminary injunction.

## II. Legal Standard

■ To prevail on a motion for preliminary injunction, the plaintiff must establish that: (1) there is a substantial likelihood of success on the merits of the claim; (2) she will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant as a result of the injunction; and (4) granting the injunction would not be adverse to the public interest. *See Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561–62 (11th Cir.1989), *aff'd sub nom. McNary v. Haitian Refugee Center*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Because a preliminary injunction is a "drastic remedy," the plaintiff bears the burden to "clearly establish" each of the four elements. *Cafe 207 v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993); *see also Anheuser-Busch, Inc. v. A–B Distribs., Inc.*, 910 F.Supp. 587, 589 (M.D.Fla.1995). As this Court has previously stated, a preliminary injunction "is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites." *Tefel v. Reno*, 972 F.Supp. 623, 633 (S.D.Fla.1997) (King, J.). Because the Court finds that IAM has not demonstrated a likelihood of success on the merits, the Court will forego an analysis of the three other requirements for the issuance of injunctive relief.

## III. Analysis

■ IAM argues that Mexicana's actions during the negotiations and its final offer violate the Railway Labor Act ("RLA" or "Act"), 45 U.S.C. §§ 151–188 (1994). Specifically, IAM alleges that Mexicana has violated sections 2 First, Third, and Fourth of the RLA. Section 2 First requires that carriers and their employees "exert every reasonable effort to make or maintain agreements ... and to settle all disputes." *Id.* § 2 First. This provision essentially requires that the parties negotiate in a good-faith attempt to solve labor disagreements. Sections 2 Third and Fourth further require that no party may "interfere with, influence, or coerce the other in its choice of representatives," *id.* § 2 Third, or "interfere in any way with the organization of its employees" or "influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization," *id.* § 2 Fourth.

IAM's principal argument is that Mexicana did not "exert every reasonable effort" to bargain with IAM because, from the outset, Mexicana's sole intention was to get rid of its unionized employees. The evidence presented to the Court does not support this claim. First, Mexicana has presented evidence demonstrating that from the beginning, it publicly sought the right to sub-contract work being performed by IAM employees as a way to reduce labor costs. In fact, outsourcing work done by IAM employees has been a central issue in the parties' negotiations. Second, Mexicana has presented evidence of a number of proposals that it offered to IAM throughout the bargaining process and docu-

ments indicating that Mexicana explored options other than total outsourcing. In the end, however, IAM's counter-proposals simply did not provide Mexicana with comparable savings. Because the final result of these protracted negotiations is that Mexicana will outsource all work currently performed by IAM employees does not mean that Mexicana engaged in bad faith. To the contrary, the evidence presented to the Court concerning the lengthy negotiations, involving exchanges of numerous proposals, indicates that Mexicana did indeed negotiate in good faith in attempting to reach an agreement with IAM. That they failed in the end to do so is not a violation of the Act.

IAM also argues that the Company has violated sections 2 Third and Fourth of the Act. There is no evidence, however, that Mexicana has attempted to coerce union employees in choosing their representative or that the Company has coerced them into surrendering their union status. IAM's argument instead appears to be that the final proposal itself, because it outsources all IAM work and thereby terminates all union jobs, is a per se violation of these provisions.

In support of its arguments, Plaintiff primarily relies on *Ruby v. TACA Int'l Airlines, S.A.,* in which the Fifth Circuit affirmed the lower court's order enjoining TACA International Airlines ("TACA") from transferring its pilot base from New Orleans to El Salvador, where local law barred the activities of the pilots' collective bargaining representative. 439 F.2d 1359 (5th Cir.1971). Through this move, TACA intended to subvert the entire process prescribed by the RLA. By moving its pilot base outside the country, it hoped to dispense altogether with the negotiating process that is at the heart of the Act. The district court properly prevented the airline from doing so. Accordingly, the Fifth Circuit noted that "the carrier's conduct constituted a patent violation of Section 2

Fourth of the Act." *Id.* at 1364. Mexicana's actions in this case, however, cannot be likened to the conduct of TACA. Here, Mexicana properly sent the IAM its notices of willingness to negotiate, as it is required to do under the Act. From the beginning, it has stated its desire to outsource work being done by union employees if no other options were available. And for three years, the company has engaged in active negotiations with IAM to reach an agreement with the IAM-represented employees. Instead of being an attempt to get around the RLA, as TACA was trying to do, Mexicana's conduct has comported with all of the Act's requirements.[1]

This Court has the power only to determine whether Mexicana has complied with the provisions of the RLA. Concluding that IAM is not likely to succeed on its claim that the Company bargained in bad faith in attempting to reach an agreement with IAM throughout these numerous negotiating sessions, the Court cannot grant the extraordinary remedy of preventing the result of those negotiations from taking place.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiff's Motion for Temporary and Preliminary Injunctive Relief be, and the same is hereby, DENIED.

DONE and ORDERED at the James Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 27th day of February, 1998.

---

1. Plaintiff also relies on *ALPA v. Transamerica Airlines, Inc.,* 817 F.2d 510 (9th Cir.1987). In that case, the pilots alleged that the airline was attempting to transfer all of its work to a subsidiary that was not bound by the pilots' collective bargaining agreement. The Ninth Circuit's conclusion that Defendant's motion to dismiss should have been denied does not provide this Court with grounds to issue a preliminary injunction for two reasons. First, in *ALPA,* the parties were still involved in mediation. Thus, the pilots' association claimed that the airlines' actions were an attempt to subvert the negotiation process altogether. Second, the Ninth Circuit simply held that the pilots had stated a claim under the RLA. The standard in the present case is quite different, in that this Court must decide whether IAM has demonstrated a likelihood of success on the merits, and not whether, as in *ALPA,* plaintiffs have simply stated a claim.