**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARLENE HERRERA; EDWARD LOPEZ; SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED HEALTHCARE WORKERS-WEST, United Service Workers West; ALEJANDRO BARRIOS, *Plaintiffs-Appellants*, v. COMMAND SECURITY CORPORATION, DBA Aviation Safeguards, a New York Corporation, *Defendant-Appellee.* | No. 14-55525 D.C. No. 2:12-cv-10968-SVW-RZ OPINION |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted March 11, 2016
Pasadena, California

Filed September 14, 2016

Before: Harry Pregerson, Richard A. Paez,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Pregerson

# SUMMARY[*]

## Labor Law

The panel reversed the district court's summary judgment in favor of an employer in an action brought under the Railway Labor Act by a union representing employees at Los Angeles International Airport.

The employer sought to remove the union as its employees' designated representative.

The panel held that equitable tolling principles applied to the union's unlawful interference and coercion claim under 45 U.S.C. § 152, Third and Fourth.  The panel held that this claim was not time-barred because the employer had notice of the union's claims, and the union acted reasonably when it attempted to use the extensive remedies afforded by the Act.  The panel also held that the employer violated § 152, Third and Fourth, when it solicited union removal petition signatures, bypassed the union to solicit employees directly, and refused to recognize and negotiate with the union.  The panel remanded and directed the district court to grant summary judgment in favor of the union on this claim.

The panel held that the district court erred in concluding that it lacked subject matter jurisdiction over the union's status quo claim under §§ 152, Seventh; 155; and 156. The union alleged that the employer unilaterally altered the parties' collective bargaining agreement.  The panel held

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

that this claim was a major dispute, relating to employer interference and status quo violations, rather than a representation dispute within the exclusive jurisdiction of the National Mediation Board. The panel remanded the status quo claim for the district court to determine whether it was timely, and, if so, to grant summary judgment in favor of the union.

The panel also directed the district court to grant summary judgment in favor of the union on a failure to mediate claim under § 152, First.

**COUNSEL**

David P. Dean (argued) and Darin M. Dalmat, James & Hoffman P.C., Washington, D.C.; Antonio Ruiz, Weinberg Roger & Rosenfeld PC, Alameda, California; for Plaintiffs-Appellants.

Mark S. Spring (argued), Carothers Disante & Freudenberger LLP, Sacramento, California; Alfredo Ortega and Steven M. Schneider, Mitchell Silberberg & Knupp LLP, Los Angeles, California; for Defendant-Appellee.

## OPINION

PREGERSON, Senior Circuit Judge:

## INTRODUCTION

This case arises from a dispute between a union and an employer who wished to remove the union as its employees' designated representative. The employer is Command Security Corporation d/b/a Aviation Safeguards ("Aviation Safeguards"). The union is the United Service Workers West of the Service Employees International Union ("the Union"). The Union sued Aviation Safeguards for violations of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–165. Aviation Safeguards moved for summary judgment, and the Union filed a cross-motion for summary judgment. The District Court granted Aviation Safeguards's motion for summary judgment and denied the Union's cross-motion for summary judgment.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the grant of summary judgment in favor of Aviation Safeguards.

We hold that equitable tolling principles apply to the Union's unlawful interference and coercion claim under the RLA, 45 U.S.C. § 152, Third and Fourth. We remand and direct the District Court to grant summary judgment in favor of the Union on its claim for unlawful interference and coercion under the RLA, 45 U.S.C. § 152, Third and Fourth.

We also hold that the District Court erred in finding that it lacked subject matter jurisdiction over the Union's status quo claim under the RLA, 45 U.S.C. §§ 152, Seventh; 155; and 156. We remand this claim for the limited purpose of determining whether this claim is timely and, if the claim is

timely, we direct the District Court to grant summary judgment in favor of the Union on its status quo claim under RLA §§ 152, Seventh; 155; and 156.

We remand and direct the District Court to grant summary judgment in favor of the Union on its failure to mediate claim under the RLA, 45 U.S.C. § 152, First.

## FACTS AND PROCEDURAL BACKGROUND

Aviation Safeguards employs workers at Los Angeles International Airport ("LAX"). In 2007, a majority of Aviation Safeguards's LAX employees signed authorization cards, designating the Union as their representative. The Union sought voluntary recognition from Aviation Safeguards by presenting the signed authorization cards to Aviation Safeguards. Aviation Safeguards agreed to recognize the Union as the employees' designated representative. In November 2008, Aviation Safeguards and the Union entered into a collective bargaining agreement set to expire in September 2010. In December 2009, before the expiration of the collective bargaining agreement, the parties negotiated a second agreement, set to expire in November 2012.

As part of the collective bargaining agreement, Aviation Safeguards made monthly contributions to a health care trust fund. These payments rose annually: in 2009, Aviation Safeguards paid $585 per month for each employee; in 2010, $620; and in 2011, $674. When the 2011 increases took place, Aviation Safeguards's LAX General Manager Joe Conlon wrote a letter to the Union President, saying that they

had reached a "crossroad."**[1]** Conlon refused the Union President's request to discuss Aviation Safeguards's concerns. Instead, Aviation Safeguards conducted a survey to assess the likelihood that its employees would revoke the Union's status as representative. In an August 15, 2011, email to its managers, Aviation Safeguards Human Resources Manager Jon Natividad wrote, "We are trying to get an initial estimate of the numbers we have and the individuals we will need to actively convince to come over to our side and sign to de-certify."**[2]**

At the start of September 2011, Aviation Safeguards began holding anti-union meetings with employees. Aviation Safeguards drafted a Union Removal Petition, which it encouraged employees to sign. The Union claims that shortly thereafter, a group of employees delivered to the LAX main office a Pro-Union Petition signed by a majority of the employees. Allegedly, this Pro-Union Petition included 39 signatures of employees who had previously signed the Union Removal Petition.**[3]**

---

**[1]** In September 2011, Aviation Safeguards executives calculated that they could save around $800,000 in 2012 if they got rid of the Union.

**[2]** At the time of Aviation Safeguards's removal efforts, there were 452 employees at LAX who were covered by the collective bargaining agreement. To decertify or remove the Union, Aviation Safeguards required signatures from a majority of the employees, at least 227.

**[3]** As the Union points out, these 39 employees who signed the Union Removal Petition and then later signed the Pro-Union Petition should be considered pro-union. By signing the Pro-Union Petition, they effectively revoked their previous signatures in support of the Union Removal Petition.

By October 12, 2011, Aviation Safeguards had failed to obtain a majority of employees' signatures on the Union Removal Petition. On October 13, 2011, Aviation Safeguards hired Cruz & Associates, a self-proclaimed union avoidance firm, to assist its union removal efforts. With the Cruz & Associates team, Aviation Safeguards held ostensibly mandatory meetings with its employees, during working hours, to foment anti-union sentiment and obtain Union Removal Petition signatures. Aviation Safeguards hid the true purpose of these meetings from employees.[4] At these meetings, Cruz & Associates team members and Aviation Safeguards representatives told employees that their wages would increase if they got rid of the Union.

On December 2, 2011, Aviation Safeguards was 23 employee signatures short of majority (227) support, so Aviation Safeguards hired new employees who were immediately solicited for Union Removal Petition signatures. By the end of December, Aviation Safeguards claimed that it obtained 246 Union Removal Petition signatures, which allegedly included the 39 signatures of employees who later signed the Pro-Union Petition.[5]

On December 30, 2011, Aviation Safeguards announced that it would no longer recognize the Union and planned to

---

[4] Kathleen McManus, Aviation Safeguards Office Manager, sent an email to Aviation Safeguards's management stating in detail the schedule and strategy for its upcoming anti-union meetings. The email cautions Aviation Safeguards's management: "[P]lease do not tell [the employees] the reason for the meeting. Just simply say it is a management meeting."

[5] The Union also notes that the Union Removal Petition included signatures from several managers, whom the Union would not represent.

change its employees' health benefits and wages starting February 1, 2012.

The Union applied to the National Mediation Board ("the Mediation Board") for mediation services on January 3, 2012. The Mediation Board conducted a pre-docketing investigation that lasted nearly six months to determine whether to mediate the dispute.

Aviation Safeguards asserted that it began enrolling employees in non-union health insurance at the end of January 2012, but that it had not completed the process by the start of February 2012. In the meantime, in January 2012, the Union claimed that a majority of employees (258) had signed the Pro-Union Petition.

On February 6, 2012, former L.A. City Councilmember Bill Rosendahl publicly counted the number of Aviation Safeguards employee signatures and confirmed that a majority of the employees supported the Union.[6] By May 31, 2012, the Union also stated that it obtained 240 signed authorization cards from Aviation Safeguards employees reaffirming and reauthorizing the Union as their designated representative. Notably, 139 of the employees that allegedly signed either the Pro-Union Petition or an authorization card had previously signed the Union Removal Petition and thereby revoked their prior anti-union support.

Aviation Safeguards did not stop remitting Union dues until February 2012. It is unclear, however, when Aviation Safeguards stopped collecting Union dues. Aviation

---

[6] Aviation Safeguards disputes the validity of the public count because it claims that any Pro-Union Petition signatures were never validated.

Safeguards argues that it stopped collecting Union dues in December 2011, and that Union dues collected in December were merely remitted the following month, in January 2012. But, if Union dues were remitted into February, as the Union states, then Union dues were likely still being collected in January.

The Mediation Board finished its nearly six-month pre-docketing investigation and docketed the case on June 26, 2012. Two days later, Aviation Safeguards informed the Mediation Board that it would not participate in mediation.

The Union filed suit against Aviation Safeguards in Federal District Court on July 31, 2012. The Union claimed coercion and interference with Union representation under the RLA, 45 U.S.C. § 152, Third and Fourth; failure to mediate under the RLA, 45 U.S.C. § 152, First; and status quo violations under the RLA, 45 U.S.C. § 156.

Aviation Safeguards moved for summary judgment, arguing that the Union's claims were barred by the RLA's statute of limitations and that the allegations constituted a representation dispute under the RLA, 45 U.S.C. § 152, Ninth, within the exclusive jurisdiction of the Mediation Board. The Union filed a cross-motion for summary judgment.

The District Court granted Aviation Safeguards's motion for summary judgment and denied the Union's cross-motion for summary judgment. The Union appeals the grant of

summary judgment and the denial of its cross-motion for summary judgment.[7]

## STANDARD OF REVIEW

We review de novo the District Court's grant of summary judgment. *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011). Additionally, when the facts are not in dispute, statute of limitations accrual decisions are reviewed de novo. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1508 (9th Cir. 1986). Where, as here, the parties have both filed summary judgment motions, this court "consider[s] each party's evidence to evaluate whether summary judgment was appropriate." *Johnson*, 658 F.3d at 960.

Where the record has been sufficiently developed through the parties' cross-motions and briefs on appeal, we may direct the District Court to grant an appellant's cross-motion for summary judgment. *Keystone Land & Dev. Co.*

---

[7] There is a related case between the parties to this appeal, *California Service Employees Health & Welfare Trust Fund v. Command Security Corp.*, 12-cv-10967 (C.D. Cal. July 31, 2014), which was recently decided in the District Court by the same judge and has been appealed to this court. That case was brought by the health care trust fund that received payments from Aviation Safeguards as part of the Union's collective bargaining agreement. *Id.* The District Court's ruling in the *Welfare Trust Fund* case relied on its decision presently before this court. *Id.* at 5–7. In the case now before us, the District Court found that Aviation Safeguards had no obligation to deal with an uncertified union, and that it lawfully withdrew recognition. Consequently, Aviation Safeguards was not obligated to continue making healthcare benefit payments to the Welfare Trust. *Id.* Because we reverse the District Court with respect to its ruling that Aviation Safeguards lawfully withdrew the Union's recognition, our decision may have some bearing on the appeal of the *Welfare Trust Fund* case.

*v. Xerox Corp.*, 353 F.3d 1070, 1076–77, 1076 n.7 (9th Cir. 2003).

## DISCUSSION

**I. The District Court Erred in Granting Aviation Safeguards Summary Judgment on the Union's § 152, Third and Fourth Claim for Unlawful Interference and Coercion**

The Union alleges that Aviation Safeguards solicited and coerced Union Removal Petition signatures, bypassed the Union to solicit employees directly, and refused to recognize and negotiate with the Union, and thus violated the RLA's unlawful interference and coercion provisions. § 152, Third and Fourth. Aviation Safeguards argues, and the District Court held, that the Union's § 152, Third and Fourth claim is time-barred under the RLA's six-month limitation period. We disagree. We hold that the Union's § 152, Third and Fourth claim is not time-barred. Further, we hold that Aviation Safeguards violated § 152, Third and Fourth. Accordingly, we remand the Union's § 152, Third and Fourth claim and direct the District Court to grant summary judgment in favor of the Union on this claim.

### A. The Union's § 152, Third and Fourth Claim for Unlawful Interference and Coercion Is Not Time-Barred

Claims under the RLA must be brought within six months after their accrual date. *Int'l Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, Inc.*, 790 F.2d 727, 735 (9th Cir. 1986) (articulating a six-month statute of limitations period for RLA claims). However, "[i]t is hornbook law that limitations periods are customarily

subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49 (2002) (internal quotation marks and citations omitted).

Equitable tolling may apply where it effectuates Congress's intent in enacting the RLA. *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 427 (1965); *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394, 396 (9th Cir. 1980). "[T]o determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." *Burnett*, 380 U.S. at 427.

Statutes of limitations are meant to ensure fairness to defendants by giving them timely notice of the claims against them. *Mt. Hood*, 616 F.2d at 400. However, this policy "is frequently outweighed . . . where the interests of justice require vindication of the plaintiff's rights." *Burnett*, 380 U.S. at 428. Equitable tolling may pause the running of the statute of limitations where a plaintiff has diligently pursued her claim but circumstances out of the plaintiff's control prevented her from timely filing. *Lozano v. Montoya Alvarez*, — U.S. —, 134 S. Ct. 1224, 1231–32 (2014); *Wong v. Beebe*, 732 F.3d 1030, 1052–53 (9th Cir. 2013) (en banc), *aff'd and remanded on other grounds sub nom. United States v. Wong*, 135 S. Ct. 1625 (2015).[8]

---

[8] In *Aloha Airlines, Inc*., we commented that "the application of the tolling doctrine to future actions of this type will be extremely limited." 790 F.2d at 738 n.4. The facts of this case fairly place it among the class of cases for which such tolling is appropriate.

Here, Aviation Safeguards likely had notice of the Union's disputes as early as September 2011, when the Union submitted a Pro-Union Petition notifying Aviation Safeguards that the Union did not agree with its attempts to remove the Union.[9] Additionally, the Union diligently pursued its claims by resorting to RLA mediation procedures. After Aviation Safeguards announced on December 30, 2011, that it would no longer recognize the Union, the Union promptly applied to the Mediation Board for mediation services on January 3, 2012, the next business day.

Further, the Union's delay in filing its federal claims reasonably resulted from its reliance on the remedies set forth in the RLA. The Mediation Board's pre-docketing investigation lasted nearly six months. At no point during that time did Aviation Safeguards indicate a refusal to mediate. Aviation Safeguards waited until after the Mediation Board finished its nearly six-month pre-docketing investigation before informing the Union that it would not participate in mediation.[10] The Union should not be punished for the Mediation Board's or Aviation Safeguards's delays.

---

[9] Aviation Safeguards may have had notice even earlier in 2011, when the Union attempted to discuss Aviation Safeguards's concerns, but Aviation Safeguards refused.

[10] Aviation Safeguards notified the Union of its refusal to mediate on Thursday, June 28, 2012. Assuming Aviation Safeguards's asserted accrual date of December 30, 2011, Aviation Safeguards's notice left the Union with just one remaining business day (a Friday) to file within the six-month limitations window.

Congress's purpose in enacting the RLA was "to encourage collective bargaining . . . to prevent, if possible, wasteful strikes and interruptions of interstate commerce." *Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 148 (1969). To accomplish this, Congress created an "elaborate" remedial scheme under the RLA that requires the parties to make "every reasonable effort" to settle disputes. 45 U.S.C. § 152, First; *Detroit & Toledo Shore Line R.R. Co.*, 396 U.S. at 148–49.[11] "[E]xhaustion of the [RLA's] remedies [is] an almost interminable process," with procedures that are "purposely long and drawn out" in the hopes that parties will eventually reach an agreement. *Detroit & Toledo Shore Line R.R. Co.*, 396 U.S. at 149 (internal quotation marks omitted).

This court has recognized that equitable tolling may effectuate the policies underlying the RLA. *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 538 (9th Cir. 2011)

---

[11] In *Conley v. International Brotherhood of Electrical Workers, Local 639*, 810 F.2d 913, 915 (9th Cir. 1987), we held that "[e]quitable tolling is most appropriate when the plaintiff is required to avail himself of an alternate course of action as a precondition to filing suit." Thus, where an "NLRB action was merely optional," allowing tolling "would frustrate the national policy of prompt resolution of labor disputes." *Id.* at 916. While it is debatable whether the Union was required to bring its dispute before the Mediation Board, the purpose of the RLA is to avoid "any interruption to commerce." *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 310 (1989) (internal quotation marks omitted). The RLA's purpose stands in contrast to the NLRB's purpose of securing a "prompt resolution of labor disputes." *Conley*, 810 F.2d at 916. Because mediation, rather than litigation, prevents "interruption to commerce," the RLA's purpose arguably supports tolling while parties utilize the Mediation Board to seek resolution of their claims. Further, filing a claim with the NLRB is itself an adversarial action, whereas mediation is a tool generally used to prevent litigation. Thus, requiring the Union to file suit while mediation is pending is nonsensical.

(citing *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342 (1944)). Tolling the statute of limitations promotes the use of the RLA's "virtually endless" mediation mechanisms, thereby preventing interruptions in commerce. *See Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 311 (1989) (internal quotation marks omitted).

Aviation Safeguards had notice of the Union's claims, and the Union acted reasonably when it attempted to use the extensive remedies afforded by the RLA. Under these circumstances, the Union's claim should not be time-barred. We therefore conclude that the District Court erred in failing to toll the statute of limitations for the Union's unlawful interference and coercion claim.

### B. Aviation Safeguards Violated § 152, Third and Fourth for Unlawful Interference and Coercion

Section 152, Third of the RLA prevents an employer from interfering with, influencing, or coercing employees' designation of a representative. § 152, Third. Along the same lines, § 152, Fourth prevents an employer from interfering with a union's operations and specifically forbids influence or coercion as part of "an effort to induce [employees] to join or remain or not to join or remain members of any labor organization." § 152, Fourth; *see also Tex. & New Orleans R.R. Co. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548, 568 (1930) (describing unlawful influence over employees' self-organization and designation of representatives).

The Union alleges that Aviation Safeguards violated these two provisions when it solicited Union Removal Petition signatures, bypassed the Union to solicit employees directly, and refused to recognize and negotiate with the

Union.**[12]** Concluding that the Union's claims were time-barred, the District Court did not address the merits of this claim. Likewise, Aviation Safeguards asserts only that the Union's interference and coercion claims are time-barred.

Federal courts have prudently drawn analogies to the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, in many RLA cases. *See, e.g.*, *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 377, 383 (1969). This court has looked to the NLRA when analyzing an unlawful coercion claim under the RLA. *See Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1015–16 (9th Cir. 1990) (stating that NLRA § 158(a)(2) provides an "apt analog[y]" to RLA § 152, Fourth, and that, like the RLA, the relevant section of the NLRA "is intended to secure for employees the right of free choice").**[13]**

Although this court has not analogized explicitly to NLRA § 158(a)(1) in analyzing interference or coercion under RLA § 152, Third and Fourth, we find that an apt analogy exists. Section 158(a)(1) of the NLRA states that it is unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title"—namely, the right to "self-organization" and to "bargain collectively through

---

**[12]** The Union's direct dealing claim alleges the same behavior as its solicitation claim, and to the extent that such dealing was coercive, we address it in our discussion of Aviation Safeguards's solicitation of the Union Removal Petition. In addition, Aviation Safeguards's refusal to recognize the Union was a result of the unlawful solicitation of Union Removal Petition signatures.

**[13]** NLRA § 158(a)(2) states that it is an unfair employer practice "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it."

representatives of their own choosing." 29 U.S.C. §§ 157, 158(a)(1). As articulated in *Barthelemy*, the NLRA guides this court's protection of employees' rights of free choice in designating their representatives. 897 F.2d at 1016.

Analogizing to NLRA § 158(a)(1), we conclude that Aviation Safeguards unlawfully interfered with the Union's activities and coerced employees to remove the Union. As this court has stated, "[a]lthough it is not an unfair labor practice for an employer to inform employees that they have a right to revoke their union support, it is an unfair labor practice to actively solicit revocations in an otherwise coercive atmosphere. It is also an unfair labor practice for an employer to directly aid employees in revoking their union authorization." *L'Eggs Prods., Inc. v. NLRB*, 619 F.2d 1337, 1346 (9th Cir. 1980) (internal citation omitted) (discussing NLRA interference under § 158(a)(1)); *accord Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1252 (2d Cir. 1992) ("[T]he Union asserts that Virgin discharged employees who were engaged in a strike designed to enforce the [Mediation Board] certification and solicited employees to sign a prepared statement repudiating the Union. These actions, if proven, constitute interference by the carrier with the employees' selection of a representative.").

Aviation Safeguards did not just "directly aid employees in revoking their union authorization," it initiated and orchestrated the entire removal effort. *See L'Eggs*, 619 F.2d at 1346. Aviation Safeguards actively solicited employees' signatures for a Union Removal Petition that it drafted. It held employee meetings with representatives from Cruz & Associates, the union avoidance firm, in which its representatives told employees that wages would increase if they got rid of the Union. Moreover, it held these anti-union meetings during normal working hours, hid the true purpose

of the meetings, and made attendance at the meetings appear mandatory. When it was still short of Union Removal Petition signatures in December 2011, Aviation Safeguards actively targeted its new hires for signatures as soon as their employment became official.

Aviation Safeguards therefore unlawfully coerced and interfered with its employees' rights to designate their representative, violating § 152, Third and Fourth. We remand this claim, directing the District Court to grant summary judgment in favor of the Union on this claim, and to conduct further proceedings to determine the issue of damages and other relief.

## II. The District Court Had Jurisdiction Over the Union's Major Dispute Claim for Status Quo Violations

The Union alleges that Aviation Safeguards unilaterally altered the collective bargaining agreement, and thus violated the RLA's status quo provisions. Aviation Safeguards argues, and the District Court held, that the court lacked jurisdiction over this claim because it constitutes a representation dispute. We agree with the Union. We hold that the dispute is a major dispute, relating to employer interference and status quo violations. Because the District Court had jurisdiction over this major dispute, we remand the claim.

### A. The District Court Erred in Finding That the Union's Claim Constitutes a Representation Dispute

The District Court held that the Union's claim constitutes a representation dispute under § 152, Ninth. Representation

disputes are within the exclusive jurisdiction of the Mediation Board. The District Court therefore dismissed the claim for lack of jurisdiction.

We have described major, minor, and representation disputes as follows:

> Major disputes comprise a class of disputes concerning rates of pay, rules or working conditions, and relate to the formation of collective bargaining agreements or efforts to secure them. The second class of disputes, known as minor disputes, grow out of grievances. These involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation. Therefore, under Congress's scheme, major disputes seek to create contractual rights, minor disputes to enforce them. Finally, representation disputes involve defining the bargaining unit and determining the employee representative for collective bargaining.

*Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc) (internal citations, quotation marks, and alterations omitted). As the District Court properly noted, a major dispute includes "attempts by . . . management to impose new obligations or create new rights." *Ass'n of Flight Attendants v. Mesa Air Grp., Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009). When an employer seeks to change a term in a collective bargaining agreement, a major dispute arises. *See Consol. Rail Corp.*, 491 U.S. at 302; *Air Line Pilots Ass'n, Int'l v. E. Air Lines, Inc.*, 869 F.2d 1518, 1523 (D.C. Cir. 1989) ("[I]f a party announces an

intent to *repudiate* the [collective bargaining] agreement by adopting a unilateral change in the terms, it triggers a major dispute.").

A representation dispute, on the other hand, arises when there is bona fide confusion about who is the employees' representative. *See, e.g.*, *Int'l Bhd. of Teamsters, Airlines Div. v. Allegiant Air, LLC*, 788 F.3d 1080, 1087–89 (9th Cir. 2015) (discussing representation disputes).

While the boundaries are not always clear-cut, this court has maintained that a major dispute exists when an employer acts to undermine a union's representative status. *Air Line Pilots Ass'n, Int'l v. Transamerica Airlines, Inc.*, 817 F.2d 510, 515 (9th Cir. 1987). In *Transamerica*, the union alleged that the employer created a subsidiary company, to which it transferred the union employees' existing business in an effort to take work from the union. *Id.* We reversed the District Court's finding that a representation dispute existed and instead held that the union alleged a major dispute within the federal court's jurisdiction. *Id.* Based on the employer's actions, we also held that the union stated a claim under RLA § 152, Third and Fourth and under the RLA's status quo provision. *Id.* at 516.

Aviation Safeguards claims that the Union lost majority support, and that this change in support justified its removal of the Union. However, Aviation Safeguards constructed the dispute with the Union by creating the Union Removal Petition and unlawfully soliciting Aviation Safeguards's employees to sign it. Aviation Safeguards cannot manufacture a representation dispute. Moreover, labor violations cannot justify revoking a Union's representative status. *See, e.g.*, *Frankl v. HTH Corp.*, 650 F.3d 1334, 1361 (9th Cir. 2011) ("[E]mployers may not withdraw recognition

in a context of serious unremedied unfair labor practices tending to cause employees to become disaffected from the union.") (quoting *Levitz Furniture Co. of the Pac., Inc.*, 333 N.L.R.B. 717, 717 n.1 (2001)) (applying similar principles in the NLRA context); *Transamerica*, 817 F.2d at 515; *In re Virgin Atl. Airways Emps. Ass'n*, 24 N.M.B. 575, 621 (1997) ("By . . . compel[ling] attendance at a meeting at which authorization cards were collected, the carrier . . . interfered, influenced or coerced employee freedom of choice . . . . Cards collected under such circumstances cannot be regarded as a true and free expression of the employees' desires with regard to representation.").

Aviation Safeguards unlawfully interfered with the Union's representation, in violation of § 152, Third and Fourth. Purportedly believing that it acted lawfully, Aviation Safeguards eliminated the wage and health care terms of the Union's collective bargaining agreement. Because the District Court did not consider the Union's unlawful interference and coercion claim, finding that it was time-barred, it did not consider the unlawful behavior at the heart of Aviation Safeguards's claimed representation dispute. The District Court erred when it held that the Union's claim constitutes a representation dispute and dismissed the claim for lack of jurisdiction.[14]

---

[14] Further, we disagree with the District Court's contention that Aviation Safeguards was not obligated to apply to the Mediation Board to remove the Union as the designated representative. As we explained in *Allegiant Air*, a union may become a legally designated representative through either Mediation Board certification or voluntary recognition. 788 F.3d at 1090–91. An employer has a duty to "treat with," i.e., negotiate with, a certified union, and that same duty exists once an employer decides to voluntarily recognize a union; certification and

### B. The Union's Claim Constitutes a Status Quo Violation, Which Is a Major Dispute

The RLA imposes upon employees and carriers an obligation to maintain existing working conditions until the RLA's internal mechanisms for dispute resolution are completed. *See, e.g.*, *Detroit & Toledo Shore Line R.R. Co.*, 396 U.S. at 150–51 (describing "three status quo provisions in the Act, each covering a different stage of the major dispute settlement procedures"). This obligation is imposed through several interlocking provisions, *see* 45 U.S.C. §§ 152, Seventh; 155; 156, that "must be read in conjunction with the implicit status quo requirement" of § 152, First, which imposes a duty on both parties to "'exert every reasonable effort' to settle disputes without interruption to interstate commerce." *Detroit & Toledo Shore Line R.R. Co.*, 396 U.S. at 151. "The obligation of both parties during a period in which any of these status quo provisions is properly invoked is to preserve and maintain unchanged those actual, objective working conditions and practices, broadly conceived, which were in effect prior to the time the pending dispute arose and which are involved in or related to that dispute." *Id.* at 152–53.

---

voluntary recognition are two avenues to become a legally designated representative. *Id.* at 1089–92. Aviation Safeguards therefore had the same duty to the Union, as a voluntarily recognized representative, as it would have had to a certified union, to apply to the Mediation Board to seek union removal. *See also, e.g.*, *In re Emps. of the Pan Am. Airways, Inc.*, 1 N.M.B. 381, 386 (1945) ("[T]he voluntary representation previously established between the Carrier and the various organizations and associations representing its employees should be considered as effective until changed in accordance with the provision of Section 2, Ninth, of the Act.").

RLA § 156 provides that employers and representatives must give at least thirty-days' written notice of any intended changes to a collective bargaining agreement. 45 U.S.C. § 156. This obligation arises "from the first notice of a proposed change in agreements up to and through any proceedings before the National Mediation Board." *Detroit & Toledo Shore Line R.R. Co.*, 396 U.S. at 150. In particular, § 156 requires that,

> In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, . . . rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board . . . .

The Union properly sought resolution through the Mediation Board when Aviation Safeguards threatened to remove the Union. After the Union requested the Mediation Board's services, and before the Mediation Board had even docketed the case, and relying on its unlawfully obtained Union Removal Petition, Aviation Safeguards altered the status quo when it ceased to recognize the Union and thereby altered wages, health insurance benefits, and other working conditions. Such a change in the working conditions violated RLA § 156's status quo provisions, creating a major dispute. 45 U.S.C. § 156.

The Union thus stated a major dispute claim under the RLA's status quo provisions set forth in §§ 152, Seventh; 155; and 156. We remand this major dispute claim for the

limited purpose of determining whether this claim is timely and, if the claim is timely, we direct the District Court to grant summary judgment in favor of the Union on this claim.**[15]**

## III.    Aviation Safeguards Violated § 152, First When It Refused to Mediate with the Union[16]

Under the RLA, employers and unions must "exert every reasonable effort to make and maintain agreements" and "to settle all disputes" to avoid strikes or other disruptions to commerce. 45 U.S.C. § 152, First. As we have determined, "[t]he duty to 'exert every reasonable effort' to reach an agreement is 'a legal obligation, enforceable by whatever appropriate means might be developed on a case-by-case basis.'" *Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 976 F.2d 541, 543 (9th Cir. 1992) (quoting *Chi. & N. W. Ry. Co. v. United Transp. Union,* 402 U.S. 570, 577 (1971)); *see also Am. Train Dispatchers Dep't v. Fort Smith R.R. Co.*, 121 F.3d 267, 270–71 (7th Cir. 1997) (affirming

---

**[15]** The Union alleges that Aviation Safeguards did not stop remitting Union dues until February 2012. However, it is unclear when Union dues ceased being collected. This disputed fact bears on when the Union's § 156 status quo violation claim began to accrue. In light of its jurisdictional ruling on this claim, the District Court had no reason to address the statute of limitations and did not make a factual finding as to when this claim began to accrue. This is an issue of fact that should be decided in the first instance by the District Court on remand.

**[16]** The District Court did not address the Union's § 152, First claim, likely because it found a representation dispute, which would have eliminated the availability of mediation. As the Union correctly argued, this claim is not barred by the six-month limitations period starting on December 30, 2011, because the claim necessarily accrued when Aviation Safeguards refused to participate in mediation.

the District Court's grant of a permanent injunction, and holding that an employer violated § 152, First by refusing to attend Mediation Board negotiation sessions).

In *Horizon Air*, we affirmed a finding that an employer violated its § 152, First duty by engaging in "surface bargaining" when it offered terms less favorable than the status quo. 976 F.2d at 547. We considered the substance of negotiations "to determine whether they were of such a nature as to indicate an intention not to reach an agreement at all" and were merely "go[ing] through the motions with a desire not to reach an agreement." *Id.* at 544–45 (internal quotation marks omitted).

This court has held that superficial attempts at negotiations violate the duty to "exert every reasonable effort." *Id.* at 547. Flatly refusing to participate in mediation surely violates this duty as well, as it indicates absolutely no effort, let alone every reasonable effort, to make or maintain an agreement. We therefore remand and direct the District Court to grant summary judgment in favor of the Union on this claim, and to conduct further proceedings to determine the issue of damages and other relief.

## CONCLUSION

To summarize: we reverse the District Court's grant of summary judgment in favor of Aviation Safeguards.

1. We hold that equitable tolling principles apply to the Union's unlawful interference and coercion claim against Aviation Safeguards. Accordingly, we remand and direct the District Court to grant the Union's cross-motion for summary judgment under RLA § 152, Third and Fourth, and to conduct further proceedings to determine the issue of damages and other relief.

2. We hold that the District Court has subject matter jurisdiction over the Union's status quo claim under RLA §§ 152, Seventh; 155; and 156. We emphasize that this claim does not constitute a representation dispute under RLA § 152, Ninth. We remand to the District Court for the limited purpose of determining whether this claim is timely and, if the claim is timely, we direct the District Court to grant the Union's cross-motion for summary judgment under RLA §§ 152, Seventh; 155; and 156.

3. We hold that Aviation Safeguards unlawfully refused to mediate. We remand and direct the District Court to grant the Union's cross-motion for summary judgment under RLA § 152, First, and to conduct further proceedings to determine the issue of damages and other relief.

Costs are awarded to Plaintiffs-Appellants.

**REVERSED and REMANDED.**